## MUSEY et al. v. CHARLES E. HIRES CO.* (No. 8696.)

(Court of Civil Appeals of Texas. Galveston. June 25, 1925. Rehearing Denied Oct. 15, 1925.)

1. Pleading ⚖️362(2)—Striking portion of answer in action to recover leased equipment for dispensing root beer held error.

In action by root beer manufacturer to recover leased dispensing equipment and damages for its misuse, it was error to strike portion of answer by which defendant claimed an outright purchase and not a lease of such equipment, and alleged that he had been overreached by plaintiff's agent, in whom he had confidence, and induced to sign agreement without knowledge of its contents.

2. Appeal and error ⚖️1042(5)—Evidence held insufficient to show ratification of lease contract, rendering harmless error in striking claims of actual sale rather than lease.

In action to recover leased equipment for dispensing root beer and damages for alleged wrongful use, evidence held insufficient to show ratification by defendant of lease contract under which such equipment had been delivered to him, rendering harmless error in striking paragraphs of answer claiming an absolute sale and fraud inducing signing of lease.

3. Appeal and error ⚖️930(3)—Issue not submitted presumed to have been determined by court.

Failure of court to submit question whether corporate plaintiff was engaged in intrastate commerce, affecting its right to do business in state, raises presumption that court determined such issue for plaintiff.

4. Appeal and error ⚖️218(2)—Party failing to request submission of issue may not complain of its nonsubmission.

Defendant, failing to request submission of issue whether corporate plaintiff was engaged in intrastate commerce affecting its right to do business in state, held not in position to complain of nonsubmission or of overruling of demurrer to complaint on ground that it showed plaintiff to be so engaged.

5. Trial ⚖️62(2)—In action to recover leased equipment for dispensing root beer, rebuttal testimony by defendant held improperly excluded.

Where lessor, suing to recover equipment for dispensing root beer, introduced evidence that such equipment was practically fool proof, and seldom out of order, it was error to exclude testimony offered by defendant in rebuttal to effect that several users of such equipment had had trouble with it.

Appeal from District Court, Harris County; Robt. G. Street, Judge.

Action by the Charles E. Hires Company against S. Musey and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

James B. & Charles J. Stubbs and F. Spencer Stubbs, all of Galveston, for appellants.

Samuel Schwartz and Lewis Fisher, both of Houston, and W. Russell Green, of Philadelphia, Pa., for appellee.

LANE, J. The Charles E. Hires Company, with its domicile in the city of Philadelphia, in the state of Pennsylvania, brought this suit against S. Musey and George Musey.

Plaintiff alleged that on the 14th day of March, 1922, it rented, leased, and loaned to defendant S. Musey, who was residing in Galveston, Tex., a certain keg, hereinafter described, together with certain accessories, including one dozen mugs of the value of $4.-50, one sign of the value of $6, and certain pipe of the value of $2 and in consideration of said lease defendant S. Musey paid plaintiff the sum of $185; and that in connection with said lease and contemporaneously therewith plaintiff and S. Musey entered into the following written agreement, to wit:

"Hires Double Faucet Keg Agreement.

"This agreement between the Charles E. Hires Company, a corporation of the state of Delaware, hereinafter referred to as lessor, and S. Musey, 2108 Market Street, Galveston, Tex., hereinafter referred to as lessee, witnesseth: That lessor has leased to lessee one Hires double faucet keg, in good order, for use in dispensing 'Hires.' The term of this lease shall continue at the will of lessor, or until possession be demanded or resumed by lessor.

"(1) Lessee expressly agreed that title to said Hires double faucet keg is and shall remain in the lessor; that he will display said Hires double faucet keg conspicuously in his store; that he will under no circumstances remove the Hires name from said Hires double faucet keg, and will use the said Hires double faucet keg only for dispensing 'Hires,' in accordance with the formula and directions furnished by the lessor and such other formulas and directions as it may from time to time furnish.

"(2) The lessee further agrees that the agents of the lessor may at any time enter his premises for the purpose of inspecting the said Hires double faucet keg and its manner of use; and agrees to return the said Hires double faucet keg to the lessor at any time upon demand, and to make delivery thereof at such place as shall be designated by the lessor; or the lessor may, at its option, without previous notice of demand, either with or without legal process, enter upon any premises where the said Hires double faucet keg may be, and take possession of and remove the same; and the lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry or removal, and disclaims

───

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

276 S.W.—47     *Writ of error dismissed for want of jurisdiction December 10, 1925.

any right of resistance thereto; and lessee waives all right of homestead or other exceptions against this obligation.

"(3) If the lessee, after such demand, shall fail or refuse to deliver up said Hires double faucet keg to lessor, as herein provided, it is hereby agreed that the damages due the lessor for such failure are $360, which is the agreed value of said Hires double faucet keg, and that lessor at its option may elect to recover possession of said Hires double faucet keg or said damages.

\* \* \* \* \* \* \* \* \* \*

"(5) Lessee further agrees that he will not underlease the said Hires double faucet keg or loan the same to any other person or corporation, and that he will maintain the said Hires double faucet keg in good order and condition, and will, upon demand by lessor, surrender the same and all parts thereof in as good condition as when received, reasonable wear and tear excepted.

"(6) The lessee further agrees that, should the lessee, or any agent or employee, dispense any liquid by means of said Hires double faucet keg other than the beverage known as 'Hires,' or dispense by means of said Hires double faucet keg, any of the beverage known as 'Hires' mixed or adulterated with any substitute for 'Hires,' then the lessee shall pay the lessor the sum of $500, which the parties hereto agree shall represent the loss sustained by the lessor in such case in respect to its good will and trade-name, and said sum shall be paid as liquidated damages and not as a penalty, and, upon breach of this covenant by the lessee, the lessor may file this lease or a copy thereof in any court, with or without an affidavit of default, and enter in said court such amicable action as may in the judgment of its attorneys be best adapted to the recovery of said sum, and any attorney is hereby authorized to appear in said action for the said lessee and confess judgment against the lessee in such action, and the clerk or prothonotary of said court is hereby requested by lessee to enter said action and confession of judgment, and thereupon issue such writ in the nature of a writ of execution as shall enable the lessor to recover said damages, the lessee hereby releasing and waiving to the lessor, and to the sheriff or other officer of the law, and to all parties concerned in such recovery of damages, all errors and rights of appeal and stay of execution. If any default occurs, and the lessor does not forthwith exercise its rights as above, such extension or indulgence shall not be considered in fact or in law as a waiver of any such rights.

"The Charles E. Hires Company, Lessor,
        "By S. Musey, Lessee.

"Dated 3/14/22."

Plaintiff alleged further that it was the manufacturer of a certain beverage known as "Hires root beer" or "Hires," and that plaintiff owned the United States trade-mark or the name of "Hires," together with all the rights and privileges relating thereto; that plaintiff leased to defendant S. Musey a certain "Hires double faucet keg," same being a keg or barrel and mechanism adapted to automatically mix and dispense the said beverage known as "Hires" or "Hires root beer," which said "Hires double faucet keg" the said S. Musey, under the terms of said lease, agreed to use for the sole purpose of dispensing "Hires" and no other beverage or substance; that the value of said "Hires double faucet keg" was $350; that the defendant S. Musey placed his son George Musey in charge of said keg; that defendants, in direct violation of the terms of said lease and plaintiff's trade-mark rights and privileges, discontinued dispensing "Hires," and used plaintiff's said keg in dispensing a different root beer; that, although often warned by plaintiff not to do so, defendants continued to dispense other root beers through plaintiff's said keg in direct violation of said lease agreement, and refused to return the said keg to plaintiff or to allow plaintiff to take possession of same, the defendants threatening to destroy said keg before same would be surrendered to plaintiff; that the defendants based their actions upon the false and fraudulent claim that defendant S. Musey had bought the barrel from plaintiff, and was the absolute owner thereof; that plaintiff believes that, unless defendants are enjoined, they will destroy or secrete said keg or continue to dispense other beverages than "Hires" through same; that the acts and conduct of defendants have resulted in damages to plaintiff in the sum of $1,000. Plaintiff prayed judgment for return of the keg or its value, for injunction restraining defendants from secreting said keg or dispensing any other beverage than "Hires" through same, and for damages for violation of the terms of said lease in the sum of $1,000.

Defendants answered and alleged that plaintiff, as shown by its petition, is a foreign corporation doing an intrastate business in Texas without a permit or payment of the license tax provided by the law of Texas, and therefore could not resort to the courts of Texas for relief. They also made general denial, and specially pleaded, substantially, that prior to this signing the alleged lease agreement, set out in the plaintiff's petition, an agent of the plaintiff interested defendant S. Musey in the purchase of a Hires root beer barrel outfit and appurtenances and appliances necessary to be used in connection therewith so that said defendant might dispense Hires root beer, and said agent offered to sell such outfit to said defendant; that thereafter another agent of plaintiff, following up the proposal first made, called on defendant, and again offered to sell him such outfit, and agreed to deliver and install said barrel; that, after S. Musey told said agent that he would buy the barrel and the carburetor, an accessory to said barrel, on the 14th day of March, 1922, said agent agreed to sell the barrel outfit, carburetor, etc., to S. Musey, and to install said barrel in his place of business in the city of Galveston, for a price agreed upon, which was a little less than $400, payable $100 upon delivery of the outfit and $50

per month thereafter, until this whole sum should be paid; ' that, contemporaneously with said agreement, said agents of plaintiff presented to defendant S. Musey the purported agreement in writing, set out in the plaintiff's petition, which they told him embodied the aforesaid agreement of purchase and sale, and assured defendant that, when he paid the amount agreed upon, the outfit, etc., would belong to him; and that, believing said representations to be true, he signed said paper; that had he not so believed he would not have signed said paper. Defendants alleged that S. Musey had known said agents a long time and had confidence in them, and that he could not read the paper; that said agents knew that he could not read, and knew that he relied upon their representations as to the contents thereof; and that he was not otherwise informed of its contents; that, so relying upon the statements made by said agents as to the contents of said paper, he signed the same; that said representations as to the contents of said paper made by said agents were untrue, and said paper did not contain the agreement entered into between S. Musey and said agents; that by such fraud and deceit S. Musey was induced to sign said paper; that, had S. Musey known or had reason to believe that he was signing a lease agreement or acknowledging title or right of possession to said outfit in plaintiff, he would not have signed said paper. They alleged that S. Musey bought and paid for said outfit, and that he is now the absolute owner thereof. They specially denied that they had at any time dispensed any other beverage or substance than "Hires" through the "Hires double faucet keg" or that they would do so. They also alleged that said contract, if made, was in restraint of trade, and therefore void. They also alleged that the barrel and outfit delivered to S. Musey under his contract of purchase was such as was sold to him, but that the barrel delivered to him was defective, and that it could not be successfully operated in the manner as said agents had represented and guaranteed it could be; that said barrel and outfit was useless to defendants, and in their efforts to operate said outfit they suffered a loss. They prayed that they be permitted to return said outfit, and that they have judgment against plaintiff for the $185 paid by S. Musey to it.

Plaintiff by supplemental petition demurred to so much of defendant's answer as alleged an outright purchase of said barrel and outfit and so much thereof as alleged fraud in the procuring of the alleged lease agreement; denied that it was engaged in intrastate business in the state of Texas; and alleged that it was wholly engaged in interstate commerce. It alleged that, if it should be held that the signature of S.

Musey to the lease agreement was procured by fraud, it is nevertheless binding on him, in that, after he was fully informed of its true contents, he agreed to its provisions and continued to deal with plaintiff under its terms, thereby ratifying said lease and waiving fraud practiced on him, if any such there was. Plaintiff also alleged that the laws of the state of Texas requiring foreign corporations to have permits to do business in Texas and pay a tax violates clause 3, section 8, of the Constitution of the United States, and is therefore of no force or effect.

Defendants filed a supplemental answer denying the allegations of plaintiff's supplemental petition.

The court overruled all of the defendants' demurrers and exceptions, and sustained the demurrers and exceptions of plaintiff, and struck out all of the allegations of defendants' answer, except those paragraphs raising the question of interstate and intrastate commerce and the general denial.

The cause was tried before a jury. The court submitted only two issues: (1) Was the root beer keg leased by plaintiff to defendant S. Musey in good order and adapted to render the service contemplated in the lease contract. (2) Did the defendant · S. Musey or any agent or employee of the said S. Musey use or attempt to use any other syrup in said keg than "Hires" after the date of the alleged adjustment between them? The jury answered both of the questions in the affirmative, whereupon the court rendered judgment for the plaintiff for the property, and, in the event of its not being found, for its value as alleged by the plaintiff, and also for $500, the sum specified in the lease contract as liquidated damages for misuse of said outfit. From the judgment so rendered the Museys have appealed.

[1] Appellants' first complaint is of the action of the court in striking out that portion of their answer alleging that S. Musey purchased the barrel and outfit outright from appellee through its agents, and that the signature of S. Musey to the alleged lease contract was obtained by means of false and fraudulent representations on the part of the agents of appellee who sold him the outfit, upon exception thereto by appellee, thus cutting him off from making proof of such matters.

We think such complaint should be sustained. The allegation in the answer that S. Musey was overreached by those whom he had known a long time and in whom he had confidence, and that he was induced by said parties to sign the lease contract by means of false and fraudulent representation as to the contents of the lease, is in our opinion amply sufficient to vitiate the contract, if sustained by proof. Evidently the action of the court in sustaining appellee's exceptions

to that part of appellants' answer above mentioned was not upon the theory that the undisputed evidence showed that S. Musey ratified the lease contract after he had been advised of its contents, for the exception was sustained before any evidence was introduced. Appellee, however, contends that the act of the court in sustaining his exception, if erroneous, constituted harmless error only, in that it was shown by the evidence that appellants ratified the lease contract after they were fully advised of its contents, and thereby renewed their contract obligations in accordance with the stipulations of said lease contract. To this contention we cannot agree. Appellants were cut off from offering evidence to the effect that at all times S. Musey was claiming that he purchased the outfit, that it belonged to him and that he had the right to use it as he pleased, and from offering evidence in support of his allegation that his signature to the lease contract was obtained by means of fraud. Not being permitted to testify that S. Musey purchased the outfit and did not lease it, they were unable to offer evidence explaining why they kept the outfit after they were advised of the contents of the paper S. Musey had signed. It was shown, however, by the testimony of witnesses introduced by plaintiff that George Musey, the son of S. Musey, was at all times asserting that S. Musey owned the outfit. It was also shown by a letter written by S. Musey, introduced by appellee, that, after S. Musey was advised of the contents of the paper signed by him, and after the time it is insisted he ratified the lease contract, he wrote Mr. Green, attorney for appellee, who was authorized by appellee to negotiate with him, concerning the outfit as follows:

"W. Russell Green, Phila. Penn.—Dear Sir: Your letter received in regard to my Hire's keg and I wish to inform you and the Hire's Co. that this keg belongs to me as I bought it and paid for it and Mr. Hardy and Mr. Scott the Hires Representatives in this territory explained it to me thoroughly in the presence of witnesses, if I cared to use any other syrup but Hires I could do so by merely removing the name Hires off of the keg and he explained it to me that I bought and paid for the keg and it was mine and I know it is and although I am not using it I'll go the limit before I'll let the Hires or Hardy remove what is mine and I can prove it is mine.    S. Musey."

[2] We have carefully examined the statement of facts, and we are unable to find any evidence that S. Musey at any time did or said anything tending to show that he conceded that he held the outfit under a lease or that he did or said anything tending to show that he or any one for him agreed to operate such outfit under the terms of the lease contract. There was in our opinion no evidence to show a ratification of the lease contract by S. Musey.

[3, 4] The pleadings of the plaintiff do not show that plaintiff was engaged in intrastate commerce in Texas, nor does the evidence conclusively so show. The most that can be said of the evidence on this question is that, if it raised such issue at all, it was still a question to be decided by the court or jury, and, since the court did not submit such question to the jury, it must be presumed that it found from the evidence that plaintiff was not so engaged, and, since appellants did not ask the submission of such question to the jury, they are not in a position to complain of its nonsubmission. Therefore we must overrule the contention that the court erred in not sustaining defendant's demurrer to the plaintiff's petition upon the grounds that it showed that plaintiff was engaged in intrastate commerce in Texas, without a permit so to do, as well as their complaint that the court failed to submit to the jury the question as to whether plaintiff was engaged in intrastate commerce in Texas.

[5] Upon the trial of this cause plaintiff proved by one of its witnesses that the Hires double faucet kegs were all practically fool proof and seldom got out of order or failed to work satisfactorily. After this testimony was introduced, two witnesses, testifying in behalf of the defendants, testified that the keg delivered to S. Musey did not work satisfactorily, and that it was usually out of order, and they offered to prove by two witnesses that each of said witnesses had one of the Hires kegs, and that both of them got out of order and did not work satisfactorily. The court refused to permit the two witnesses to so testify, and of such refusal appellants complain. In view of another trial, we deem it advisable to state that, after plaintiff had introduced testimony of witnesses to the effect that plaintiff's kegs never got out of order, for the purpose of disproving the contention of defendants that the keg delivered to S. Musey got out of order, it was error of the court to refuse to permit appellants, in rebuttal, to show that some of the kegs of the plaintiff did get out of order. Having reached the conclusions that the court committed harmful error in striking out those portions of the defendants' answer whereby they alleged that S. Musey by his agreement with the agents of the plaintiff purchased the outfit, and that he was induced to sign the lease contract by reason of false and fraudulent representations made to him by said agents who sold him such outfit, it becomes our duty to reverse the judgment and to remand the cause, and it is accordingly so ordered.

Reversed and remanded.